The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Donald Eugene THOMPSON, Defendant–Appellee.

No. 87SA471.

Supreme Court of Colorado, En Banc.

April 17, 1989.

---

James F. Smith, Dist. Atty., Seventeenth Judicial Dist., Steven L. Bernard, Chief Trial Deputy, Michael J. Milne, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

Ralph B. Rhodes, Denver, for defendant-appellee.

KIRSHBAUM, Justice.

■ The People have filed this interlocutory appeal pursuant to C.A.R. 4.1 seeking review of the trial court's order granting a motion filed by the defendant, Donald Eugene Thompson, to suppress evidence of contraband seized from Thompson's residence.[1] The People argue that in the circumstances of this case exigent circumstances justified a decision by police officials to enter and search a private residence without first obtaining a search warrant. We agree with the People's argument.

On March 4, 1987, at 3:30 a.m., Aurora Police Department Officers Michael Achziger, Mark Fletcher and Michael Yorchak were dispatched to 19761 East 17th Place in Adams County to investigate a report by an anonymous caller of a "domestic dispute, a man beating a female." When they arrived at that address at 3:40 a.m., they heard loud music emanating from the house next door. Officer Achziger knocked on the door of the 19761 East

---

1. The People have not included Thompson's motion to suppress in the record provided on appeal, even though this entire proceeding is based on the trial court's asserted error in ruling on that motion. We are therefore unable to ascertain whether the motion was based upon federal constitutional standards, Colorado constitutional standards, or both. The People have also failed to certify copies of certain police reports referred to frequently during the examination and cross-examination of prosecution witnesses at the suppression hearing.

It is the responsibility of the prosecution in C.A.R. 4.1 appeals to provide this court with sufficient relevant portions of the trial proceedings to permit application of the appropriate legal standards. *Braverman v. United States,* 317 U.S. 49, 51, 63 S.Ct. 99, 100, 87 L.Ed. 23 (1942); *Gatewood v. United States,* 209 F.2d 789, 792 (D.C.Cir.1953); *People v. Cram,* 180 Colo. 418, 505 P.2d 1299 (1973). Furthermore, C.A.R. 4.1 specifically states that the record on appeal shall include a copy of the motion upon which the interlocutory proceeding arises. Such material is especially important in interlocutory appeals, which are authorized only for quite limited purposes and require careful analysis of the factual contexts within which the asserted misapplications of legal principles occurred. Failure to certify critical documents would normally warrant affirmance of the trial court's judgment without consideration of the merits of the People's arguments. *Id.* For purposes of this opinion, we will assume that Thompson relied upon the fourth and fourteenth amendments to the United States Constitution and article II, section 7, of the Colorado Constitution in challenging the admissibility of the evidence and proceed to address the merits of the appeal.

17th Place residence, awakening the occupant. She stated that everything was fine and then pointed to the house which was the source of the music.

The three officers then walked next door, to 19791 East 17th Place. As they approached, Officer Achziger observed several spent .38 caliber casings on the driveway. He also observed blood on the front porch, on the front door, and on the side of the house next to the front door. The front door was ajar several inches, and glass in the front door was shattered and completely broken around the door knob. Officer Achziger positioned himself at the front corner of the house while the other two officers approached the entrance.

Officer Fletcher knocked on the front door. A woman, later identified as co-defendant Kimberly Grahl, answered the knock; stated "[h]e's gone. Everything's okay"; pushed the door shut and locked it; and then walked upstairs. Observing that Grahl's face and the front of her white smock were covered with blood and that she was holding an ice pack to her head, Officer Fletcher concluded that she had been assaulted. Officer Achziger then reached through the hole and opened the door, and the officers entered the house to determine the extent of Grahl's injuries and to ascertain whether other victims remained inside.[2]

Upon entering the house the officers observed a stairway leading upstairs and downstairs and saw Grahl standing at the top of the upstairs landing. Officer Achziger searched the upstairs rooms while the other two officers remained with Grahl. He found a rifle in the back of an open walk-in closet in the master bedroom and observed a revolver on the floor of another closet. He unloaded the revolver and found two live shells and two spent shells.

Officer Achziger then announced that he was going downstairs to search for addi-tional injured persons. Grahl protested, stating, "He's gone. You don't have to go down there. This is my house. I wish you guys would get out of here." She also grabbed his arm and said "[h]e's not down there." Officer Achziger nevertheless proceeded to investigate the downstairs area, and while doing so discovered several large marijuana plants behind a blanket hanging from the floor joists. He also observed heat lamps and reflective sheeting—items which, he testified, are items used in the cultivation of marijuana. He advised the other two officers of his discoveries, secured the scene, and requested assistance from the Special Assignments Bureau of the Aurora Police Department.

While Officer Achziger searched the residence, Officer Fletcher questioned Grahl. She stated that she and Thompson had lived at the house together for approximately six months, that she and Thompson had quarreled, that Thompson beat her up, and that several shots had been fired through the front door of the residence. Grahl later informed another officer that Thompson struck her in the face, breaking her nose; that she then fired a .32 caliber handgun once into the ceiling to chase Thompson away; and that she fired a second shot through the front door when Thompson, whom she had followed outside, attempted to reenter the house.

Merle Brosky, an investigator with the Aurora Police Department Special Assignments Bureau, arrived at the residence approximately an hour after the initial search and walked through the house. He submitted an affidavit for a search warrant. After obtaining the warrant, sometime after 3:00 that afternoon, Brosky returned to the residence and conducted a search for evidence of ownership. He found one page of what appeared to be a typed residence lease agreement for the period dated August 3, 1986, through August 3, 1987, iden-

---

**2.** At the suppression hearing the People argued that the police entered the premises because there was a "possibility [that] a crime had been committed"; because the officers had a "responsibility to insure the safety of the individual [and] to check for other people who were hurt"; because of "the possibility that the blood and shells would be removed"; and because of "the possibility for damage to the police officers." However, the record contains no testimony by any officer indicating that the officers were concerned for their own safety or were apprehensive that evidence might be destroyed.

tifying the lessor as Thompson. No signature page was attached. He also located a telephone bill in Thompson's name dated February 10, 1987, for the telephone at the residence.

On March 27, 1987, Grahl and Thompson were charged with cultivation of marijuana in violation of section 18–18–106(8), 8B C.R.S. (1986) (amended July 1, 1987), and possession of more than eight ounces of marijuana in violation of section 18–18–106(4)(b), 8B C.R.S. (1986). Thompson filed a motion to suppress the evidence of the contraband, apparently on the ground that the initial entry and subsequent searches violated his constitutionally protected rights to due process of law.[3] The trial court granted the defendant's motion, concluding that the People failed to establish that the warrantless entry was justified.

▮▮▮ The "emergency doctrine" exception to the warrant requirement is but a specific example of the exigent circumstances doctrine, and the People have the burden of establishing that a warrantless search was justified under the circumstances of a particular case. *Mincey v. Arizona,* 437 U.S. 385, 390–91, 98 S.Ct. 2408, 2412–13, 57 L.Ed.2d 290 (1978); *People v. Hogan,* 649 P.2d 326, 330 (Colo.1982). *See also People v. Jansen,* 713 P.2d 907, 911 (Colo.1986); *People v. Turner,* 660 P.2d 1284, 1287 (Colo.1983); *People v. Williams,* 200 Colo. 187, 191, 613 P.2d 879, 882 (1980). In *Hogan,* 649 P.2d at 330, we emphasized the limited nature of the emergency circumstances exception to the requirement that non-consensual entry into a residence may be effected only after a judicial officer has executed a search warrant authorizing such intrusion. *See also Thompson v. Louisiana,* 469 U.S. 17, 19–21, 105 S.Ct. 409, 410–411, 83 L.Ed.2d 246 (1984). However, we also recognized that circumstances requiring immediate police action included a colorable claim of an emergency threatening the life or safety of another. *Hogan,* 649 P.2d at 331. *See also People v. Clements,* 661 P.2d 267, 271 (Colo.1983); *McCall v. People,* 623 P.2d 397, 402 (Colo. 1981). We have previously indicated that

the presence of an immediate crisis and the probability that assistance will be helpful are factors tending to support a warrantless non-consensual search. *People v. Reynolds,* 672 P.2d 529, 532 (Colo.1983); *People v. Amato,* 193 Colo. 57, 60, 562 P.2d 422, 424 (1977). *See also Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413; *United States v. Smith,* 797 F.2d 836, 840 (10th Cir.1986); *People v. Roark,* 643 P.2d 756, 770 (Colo. 1982). The circumstances must be evaluated as they would have appeared to a prudent and trained police officer at the time the decision to conduct the warrantless search is made. *People v. Malczewski,* 744 P.2d 62, 66 (Colo.1987). *See* Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment,* 22 Buffalo L.Rev. 419, 426–27 (1973).

▮▮▮ A prompt and limited warrantless search of a scene at which violence has occurred may also be necessary to determine if there are any injured parties or if the perpetrator of the violence is still on the premises. *People v. Harding,* 620 P.2d 245, 247 (Colo.1980). Such search is strictly circumscribed by the exigency which created its justification and cannot be used to support a general exploratory search. *Reynolds,* 672 P.2d at 531–32. *See also Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413–14; *Roark,* 643 P.2d at 770; *People v. Gomez,* 632 P.2d 586, 592 (Colo.1981). For instance a search of drawers, desks or other such areas would exceed the reasonable parameters of a search for additional persons. The evidence presented at the suppression hearing does not suggest that upon entry the officers did more than conduct a quite limited search of the premises to ascertain whether additional injured persons were present.

The trial court found that Grahl could not reasonably have been considered seriously injured and that the circumstances in their totality did not justify the failure to obtain a warrant. We disagree.

The officers observed spent casings in front of the house, broken glass around the

---

**3.** *See supra* note 1.

door, blood on the porch and blood on Grahl's face and clothing. These observations could certainly lead a reasonable police officer to suspect that Grahl was seriously injured, that other injured persons might be located inside the premises, and that Grahl's statements were made under duress because the perpetrator was still present. Neither evidence nor the trial court's findings suggest that the officers entered the residence for any purpose other than to assist Grahl and search for additional victims. Although Grahl's protest must be given careful consideration, we conclude the evidence establishes the existence of an emergency justifying the warrantless entry and limited search of Thompson's residence.

For the foregoing reasons, the ruling of the trial court is reversed and the cause is remanded for further proceedings.