The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Sherry Denise MARTIN,
Defendant–Appellant.

No. 88CA1130.

Colorado Court of Appeals,
Div. V.

Oct. 11, 1990.

Rehearing Denied Nov. 23, 1990.

Certiorari Granted March 11, 1991.

Mark M. Myers, Deputy Dist. Atty., Aspen, for plaintiff-appellee.

David F. Vela, State Public Defender, Jaydee K. Bachman, Deputy State Public Defender, Greeley, for defendant-appellant.

Opinion by Judge CRISWELL.

Defendant, Sherry Martin, appeals from the judgment of conviction entered upon a jury verdict finding her guilty of unlawful possession of a controlled substance. We affirm.

Defendant was injured as she was cleaning the second floor of a condominium when part of the balcony railing gave way. Individuals outside the condominium heard her cries for help and summoned emergency assistance. A police officer, deputy sheriff, and an ambulance with two paramedics responded to the call.

As the paramedics prepared to transport the defendant to the hospital, she expressed some concern for her personal belongings which consisted of a parka and some boots. The deputy sheriff assured defendant that the items would be taken to the hospital.

After the ambulance left, the police officer and deputy sheriff returned to the condominium to secure it and to retrieve some medical equipment that had been left behind. They noticed that twenty-one dollars had been left on a counter, with an accompanying note that it was for the cleaning person, and decided to put it in defendant's coat pocket.

Before doing so, however, the police officer, who was holding the jacket, lifted the flap of the pocket and looked inside. According to him, he did so to make sure that there were no dangerous objects that could injure his hand. In doing so, he saw a piece of folded paper, commonly known as a bindle, inside the pocket. Believing that the bindle might contain cocaine, the officer removed it and took it to the hospital where it was subsequently opened. As suspected, the bindle did contain cocaine, and defendant was arrested upon her release from the hospital.

## I.

In challenging her conviction on the grounds that the trial court erred in refusing to suppress the bindle and its contents, defendant first argues that the officer's search of the pocket was unlawful. We disagree.

Unless it falls within one of the recognized exceptions, a warrantless search is presumptively invalid under the Fourth Amendment and Colo.Const., art. II, § 7. *People v. Dandrea*, 736 P.2d 1211 (Colo. 1987). Further, even if a warrantless search is within the scope of a given exception, the search must meet the ultimate requirement of reasonableness. *People v. Boff*, 766 P.2d 646 (Colo.1988).

Whether a search is reasonable must be determined by balancing the need for the particular search against the invasion of personal rights involved, with consideration given to the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it was conducted. *People v. Blehm*, 44 Colo.App. 472, 623 P.2d 411 (1980).

One exception to the warrant requirement is present when the search is undertaken in the face of an emergency. *See People v. Amato*, 193 Colo. 57, 562 P.2d 422 (1977). But, to support a warrantless search in such circumstances, there must be a showing of an immediate crisis inside private premises and the probability that police assistance will be helpful in alleviating that crisis. *People v. Malczewski*, 744 P.2d 62 (Colo.1987).

Both parties acknowledge that, here, the police officer had, at least initially, the legal right to be present in the condominium in response to the emergency call. *See People v. Amato, supra*. Further, the People concede that a search occurred when the police officer opened and looked into the pocket.

Defendant contends, however, that any emergency ceased to exist when the ambulance departed for the hospital. She further argues that the police officer had no legitimate need to place the money in her pocket because it was obvious that she had not finished her cleaning and, therefore,

was not entitled to the money, and because the money would have been safe in the condominium after the unit had been secured.

Whether a search is reasonable for Fourth Amendment purposes depends upon the facts and circumstances of each case. *People v. Savage,* 630 P.2d 1070 (Colo. 1981). If the determination of reasonableness depends upon the purpose and motivation of the investigator, an appellate court must defer to the credibility resolutions of the trial court. *See People v. Burns,* 197 Colo. 284, 593 P.2d 351 (1979) (existence of exigent circumstances); *People v. Eakins,* 196 Colo. 517, 587 P.2d 790 (1978) (same).

Here, under the factual circumstances disclosed by the evidence presented to the trial court, we conclude that that court's determination has support in the evidence and that the search was not, as a matter of law, unreasonable.

■ First, to hold as defendant urges, that the officer's presence in the condominium was no longer justified under the emergency doctrine after the ambulance left for the hospital, would be to adopt an unnecessarily restrictive application of the exception. It would effectively bar emergency personnel from completing follow-up procedures required by the emergency. Thus, we decline to overrule the trial court's conclusion that the officer's later presence was authorized.

■ Likewise, the officer's decision to place the money in defendant's pocket cannot, as a matter of law, be deemed unreasonable. In light of the assurances given to defendant that her personal belongings would be taken to the hospital, and considering the fact that the money was accompanied by a note indicating that it belonged to defendant, we cannot fault the trial court for finding that it was reasonable for the officer to place the bills in defendant's coat. That the officer may have had other safekeeping alternatives available until the money could be delivered to defendant does not necessarily render his actions here unreasonable. *See People v. Malczewski, supra; People v. Thompson,* 770 P.2d 1282 (Colo.1989) (warrantless search in face of

emergency must be evaluated as prudent and trained police officer would view circumstances at the time decision to search is made).

Finally, the officer testified that his search was prompted by the training he had received that an officer should never place his hand blindly into an area lest there be a dangerous object, such as a hypodermic needle, which could cause him injury. He also testified that he noticed something heavy in the pocket, which later was determined to be defendant's keys. Consequently, we cannot say that the trial court committed error in crediting this testimony and in also finding that this action was reasonable.

## II.

■ Defendant next contends that, even if the search of the pocket was lawful, the officer's subsequent seizure of the bindle was in violation of the warrant requirement. Again, we disagree.

Items of contraband within the plain view of the police may be seized without a warrant. *See People v. Unruh,* 713 P.2d 370 (Colo.1986), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2894, 90 L.Ed.2d 981 (1986). Such a seizure is permissible only if there has been a valid initial intrusion. In addition, the officer making the seizure must have present knowledge of facts that establish a reasonable nexus between the article to be seized and criminal behavior. *People v. Reynolds,* 672 P.2d 529 (Colo. 1983).

We have already determined that the officer's initial intrusion into the pocket was reasonable. Defendant also does not dispute that the officer's discovery was inadvertent. Rather, she maintains that the bindle, which was opaque, did not by itself provide the required nexus to criminal behavior.

In making this assertion, defendant relies on *People v. Ware,* 174 Colo. 419, 484 P.2d 103 (1971), which involved the warrantless search and seizure of a "tin-foil" package inadvertently observed in the defendant's shirt pocket. The court in *Ware*

refused to find the search and seizure of the package lawful, holding that, because "tin foil" packages may contain many legitimate items, they cannot by themselves give rise to an assumption that illegal drugs are present.

Here, by contrast, the officer testified that he had seen a "bindle" approximately fifty times in the past and that in all of those cases, the bindle had been used to transport cocaine. He also stated that the formal police training he received taught officers to differentiate between machine folded paper containers such as those used for razor blades and handmade bindles, such as the one seized from defendant's pocket, which are folded in a unique way and, thus, are readily recognizable. His teaching and experience was that these handmade bindles are used virtually exclusively to carry illicit drugs. The officer's testimony was confirmed by both of the paramedics and the deputy sheriff, all of whom testified that, based on their experience, bindles were always used to package and dispense cocaine.

Similar testimony was deemed sufficient by the court in *People v. Lilienthal*, 22 Cal.3d 891, 150 Cal.Rptr. 910, 587 P.2d 706 (1978), to uphold the warrantless seizure of a bindle under the plain view doctrine. Such testimony, albeit in combination with a furtive gesture of the defendant, was also relied upon by the court in *State v. Courcy*, 48 Wash.App. 326, 739 P.2d 98 (1987) in affirming the warrantless seizure of a bindle.

We consider these cases dispositive of the issue raised by defendant. They recognize that the unique nature of a bindle, which is defined by Webster's Third New International Dictionary (1981) as a slang word for "a small package, envelope, or paper containing a narcotic (as morphine, heroin, or cocaine)," may provide by its very shape and design the required nexus to criminal activity, so long as the investigating officer has knowledge of that unique character.

### III.

■ Likewise, we also conclude that the subsequent opening of the bindle was not improper.

In *State v. Courcy, supra,* the court determined that the warrantless search of a bindle was justified under the "single purpose container rule." That rule, which is an extension of the plain view doctrine, is grounded upon *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). The court there stated, in footnote 13:

> "Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance...."

*See also generally* 3 W. LaFave, *Search & Seizure* § 7.2(d) (2d ed.1987).

■ We agree with the court in *State v. Courcy, supra,* that a bindle has a unique nature which announces that it contains contraband; for all practicable purposes it is as if the bindle is constructed of transparent material. Therefore, there can be no reasonable expectation by anyone in possession of such a bindle that, while the bindle is closed, its contents will remain private and undisclosed.

While the single purpose container rule has not been expressly adopted in Colorado, our supreme court has recognized that, when an object is lawfully seized and the police have a reasonable belief that the object is itself evidence of the commission of a crime, a subsequent examination of the object made at or near the time of the seizure and undertaken for the purpose of determining its evidentiary value is not an unlawful search. *People v. Zamora*, 695 P.2d 292 (Colo.1985). Further, the fact that virtual certainty is necessary before a warrantless search may be upheld under the single purpose container rule ensures any added protection that might be required under our state warrant requirement. *See State v. Courcy, supra.*

The result we reach is not contrary to the case of *People v. Dandrea, supra,*

where the court held that a warrantless search of a bindle was unlawful. There, the search of the bindle occurred after it was seized during a pat-down search for weapons under the civil protective custody provisions of the Colorado Alcoholism and Intoxication Treatment Act, § 25–1–301, et seq., C.R.S. (1989 Repl.Vol. 11A). Because the court's analysis of defendant's privacy interests focused specifically on the purposes of those provisions of the act, we conclude that the *Dandrea* holding is inapposite to the facts and issues at hand.

In summary, we conclude that the trial court could, under the evidence presented, properly hold that discovery of the bindle was not constitutionally deficient. Similarly, we conclude that the seizure and opening of the bindle to discover the cocaine was constitutionally permissible. Hence, the cocaine was properly admitted into evidence.

The judgment is affirmed.

DAVIDSON and DUBOFSKY, JJ., concur.