**The PEOPLE of the State of Colorado,** Plaintiff–Appellee,

v.

**Joseph MASCARENAS, Defendant–Appellant.**

**No. 97CA0922.**

Colorado Court of Appeals, Div. II.

Nov. 13, 1998.

Rehearing Denied Dec. 10, 1998.

Certiorari Denied March 15, 1999.

tant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Joseph Mascarenas, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of cocaine. We affirm.

Police were dispatched to the home defendant shared with his girlfriend after the girlfriend's daughter reported a domestic dispute. During a search of the house, officers discovered defendant in the basement. While they were frisking him for weapons, two packets of cocaine fell out of his sock.

The trial court denied defendant's motion to suppress the evidence, and the conviction here at issue followed.

### I.

■ Defendant raises several challenges to the trial court's denial of his motion to suppress. In addressing these contentions, we defer to the trial court's factual findings, and may reverse only where the trial court's conclusions are unsupported by its evidentiary findings or where it applied an erroneous legal standard. *Petersen v. People*, 939 P.2d 824 (Colo.1997).

### A.

Defendant first contends that the initial entry into and subsequent search of his home were unlawful. We do not agree.

■ Warrantless searches and seizures are presumptively unconstitutional, *see People v. Higbee*, 802 P.2d 1085 (Colo.1990), and the prosecution has the burden of establishing that a warrantless search was justified under the circumstances. *People v. Thompson*, 770 P.2d 1282 (Colo.1989).

■ A warrantless entry into a home is justified if there was probable cause to search and exigent circumstances existed at the time of the unauthorized entry. One

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Christine Cates Brady, Special Assis-

situation which may constitute exigent circumstances is the existence of a colorable claim of emergency threatening the life or safety of another. *People v. Miller,* 773 P.2d 1053 (Colo.1989); *People v. Marez,* 916 P.2d 543 (Colo.App.1995).

This "emergency" variant of exigent circumstances requires a showing of immediate crisis inside the home and the probability that police assistance will be helpful in alleviating that crisis. In determining whether this showing has been made, a court must examine the totality of the circumstances, including the delay likely to be occasioned by obtaining a warrant, the character of the investigation, and the potential risk posed to other persons from the delay. These facts are to be evaluated as they would have appeared to a prudent and trained police officer at the time of the challenged entry. *People v. Higbee, supra; People v. Marez, supra.*

■ The emergency exigent circumstances principle has been invoked in domestic violence situations to justify a warrantless entry into a home. *See People v. Thompson, supra; People v. Reynolds,* 672 P.2d 529 (Colo. 1983). In such situations, an immediate search of the home may be necessary to determine if there are any injured parties or if the perpetrator of the violence is still on the premises. However, the search may not be a general exploratory search, but is circumscribed by the exigency which initially justified it. *See People v. Thompson, supra.*

■ Under these standards, both the initial entry and the subsequent search were justified in this case. The officers were responding to a domestic violence report made by a family member. She had called the police after receiving a call from her eleven-year-old sister, who was present in the home at the time of the altercation. The officers testified that when defendant's girlfriend answered the door, her face was flushed, she appeared upset, and she had an old black eye. The girlfriend denied that there had been any violence, but admitted that she had a fight with defendant. One officer described the home as appearing "a little ransacked."

The officers had extensive experience responding to domestic violence calls. One officer testified that victims in domestic violence situations are often uncooperative and "they tell you nothing happened even if it did." The other explained that it is standard procedure in such situations to talk to all parties to make sure no one is harmed or needs assistance.

In these circumstances, it was not unreasonable for the officers to enter the home, even though defendant's girlfriend denied that there had been any violence.

■ Nor was the officers' subsequent search unreasonable in its scope. The girlfriend initially told the officers she thought defendant had left. However, after the police entered the house, the girlfriend's daughter told them that defendant was in the basement. At that point, the officers needed to ascertain defendant's whereabouts and his condition, and to determine whether anyone else was hurt. One officer testified that he was concerned that "we might go downstairs and see her boyfriend all beat up. You know, I had never seen him. I didn't know what his condition was either." Similarly, the other explained that "we did not know if [defendant's girlfriend] was actually the assaulter and not the assaultee or if [defendant] was still okay and still alive in the basement." In this situation, it was not unreasonable for the officers to extend their search to the basement.

Because we conclude that the officers' warrantless entry into and search of defendant's home were justified, we do not reach the issue of whether his girlfriend consented to the initial entry.

**B.**

Defendant next argues that the officers were not justified in conducting a pat-down search of him when they found him in the basement. Specifically, he contends, first, that the trial court erred in applying a "reasonable suspicion" standard, as set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to decide whether the pat-down search was justified. He maintains that this standard applies only to investiga-

tive stops in public places, not to searches of a person in his or her home. Second, he argues that even if the "reasonable suspicion" standard applies, the police did not have a reasonable basis for suspecting that he was engaged in criminal activity or that he was armed. We disagree with both contentions.

■ Under *Terry v. Ohio, supra*, police may conduct a pat-down weapons search, or frisk, if specific, articulable facts, taken together with inferences which may be drawn from those facts, give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity. *People v. Hughes*, 767 P.2d 1201 (Colo.1989); *see also* §16–3–103, C.R.S.1998 (police officer may stop any person who officer reasonably suspects is committing, has committed, or is about to commit a crime, and, if officer reasonably suspects that his or her personal safety requires it, may conduct a pat-down search of that person for weapons).

■ Contrary to defendant's contention, the "reasonable suspicion" standard may in certain circumstances apply to pat-down weapons searches in situations other than an investigative stop on the street or in another public place. *See People v. Hughes, supra* (upholding stop and frisk of individual present in drug seller's apartment at time police executed search warrant); *People v. Casias*, 193 Colo. 66, 563 P.2d 926 (1977)(stop and frisk of defendant near door to his home did not violate Fourth Amendment where police had legitimate basis service of a search warrant for initially contacting defendant, and had reasonable basis for suspecting that defendant might be armed).

■ Here, as discussed above, the police had a legitimate basis for their initial entry into and search of defendant's home. When they encountered defendant, they also had a reasonable basis for conducting a pat-down search to ascertain whether he was armed. Although defendant appeared to be sleeping when the officers approached him, they observed a cold, full, open beer can next to him, and "deduced from this that he had just gotten downstairs." The girlfriend had denied that weapons had been used in the

altercation; however, the officers were aware that she had not given them truthful information as to defendant's whereabouts.

Moreover, based on their experience, the officers knew that domestic violence situations were particularly dangerous. One officer testified that they had been instructed to conduct pat-down searches in such situations "for our own safety to make sure they don't have ... weapons so they won't harm themselves or the officers."

■ The trial court thus did not err in applying the "reasonable suspicion" standard and in concluding that, under that standard, the pat-down search of defendant was justified. Further, when the officers felt a hard object in defendant's sock during the course of their pat-down search, they were justified in removing the object to determine if it was a weapon or other dangerous instrument that could jeopardize their safety. *See People v. Ratcliff*, 778 P.2d 1371 (Colo.1989).

## C.

Defendant next contends that, even if police lawfully frisked him for weapons, they were not justified in seizing and opening the cocaine "bindles" which fell out of his sock when they pulled out the hard object. Again, we do not agree.

■ Under the plain view doctrine, a police officer may lawfully seize an object encountered in the course of a lawful pat-down search if the officer has reasonable grounds to believe the object is incriminating. A plain view seizure requires that the facts available to the officer would warrant a person of reasonable caution to believe that the items are contraband, fruits or instrumentalities of a crime, or evidence of criminal activity. *People v. Melgosa*, 753 P.2d 221 (Colo.1988).

■ Further, when an object is lawfully seized and the police have a reasonable belief that the object is itself evidence of the commission of a crime, a subsequent examination of the object, made proximate in time to the seizure and undertaken for the purpose of determining its evidentiary value, is not an

unlawful search. *People v. Zamora*, 695 P.2d 292 (Colo.1985).

Here, the objects that fell out of defendant's sock were two folded-up pieces of paper, or "bindles." They were unfolded by the police at the time of the seizure and found to contain cocaine.

In contending that it was unlawful to open the bindles, defendant relies on cases recognizing that warrantless searches of closed containers may be unlawful even where such containers are in plain view. *See People v. Ratcliff, supra; People v. Casias, supra; People v. Ware*, 174 Colo. 419, 484 P.2d 103 (1971)(search of small, foil-wrapped package not justified under plain view doctrine, where officer suspected it contained hashish but admitted it could have contained anything).

 We conclude that these "closed container" cases do not require suppression of the evidence here, because the bindles seized from defendant are the sort of unique, single-purpose containers that may be opened without a search warrant under the "single purpose container rule." This rule has been recognized as permitting warrantless searches of folded-paper bindles on the theory that such objects are used almost exclusively to carry illicit drugs, and thus, by their very shape and design, may provide the required nexus to criminal activity where the investigating officer has knowledge of that unique character. *See People v. Martin*, 806 P.2d 393 (Colo.App.1990), *vacated on other grounds*, 806 P.2d 387 (Colo.1991); *see also People v. Limon*, 17 Cal.App.4th 524, 21 Cal. Rptr.2d 397 (1993)(paper bindles are examples of containers that are so distinctive in nature than an officer may, based on experience with such containers, have probable cause to search or seize them when they are in plain view); *State v. Cornwall*, 810 P.2d 484 (Utah Ct.App.1991)(reversing suppression of evidence where officer observed paper bindle in plain view and knew from her training that such packets are commonly used as containers for cocaine); *State v. Courcy*, 48 Wash.App. 326, 739 P.2d 98 (1987)(officers were justified in opening folded paper that they recognized as a cocaine bindle; because of appearance of container itself, contents were in effect in open view).

Here, the officer who opened the bindle when it fell out of the sock testified that he was familiar with bindles, that they were used as containers for narcotics, and that he had seen them used for this purpose in previous investigations and in his academy training. Based on his knowledge and experience, the officer had reasonable grounds to believe that the bindles were evidence of the commission of a crime. Thus, his opening of the bindles to examine their contents was not an unlawful search.

### D.

We also reject defendant's contention that the court committed reversible error by failing to rule on his motion to reconsider its ruling on the motion to suppress.

 In its findings made at the conclusion of the suppression hearing, the trial court noted that there was conflicting testimony as to whether the girlfriend had a black eye when the officers spoke with her. The court did not suggest that its ruling on the suppression motion turned on whether the girlfriend did or did not have a black eye. Nevertheless, defendant subsequently filed a motion to reconsider, in which he asked that the court "allow counsel to present further testimony in support of the motion to suppress and to argue the facts based on new evidence in support of the motion to suppress." The motion was accompanied by notarized letters from three individuals stating that the girlfriend did not have any bruises on her face at the time of the alleged domestic violence incident.

Although the record does not contain any ruling on the motion to reconsider, part of the requested relief was granted, in that defendant was allowed to present testimony at trial from two witnesses who supported the girlfriend's statement that she did not have a black eye when the police came to defendant's home. In rebuttal, one of the police officers again testified that he had immediately noticed the black eye when the girlfriend came to the door.

Defense counsel argued in closing that the testimony of these two witnesses called into

question the officers' credibility. However, there is nothing in the record to indicate that defendant renewed his motion to suppress or otherwise argued that the testimony of these witnesses warranted reconsideration of the initial suppression ruling. In these circumstances, the trial court was not required *sua sponte* to change its initial ruling and suppress the cocaine based on the witnesses' testimony.

## II.

Defendant also argues that it was reversible error for the trial court to refer the jury back to the original instructions when the jury asked for clarification of a term in one of the instructions. We disagree.

 Whether to provide a jury with additional written instructions which properly state the law is a matter committed to the trial court's sound discretion. *People v. Baca*, 852 P.2d 1302 (Colo.App.1992). Under the *ABA Standards for Criminal Justice*, Standard 15–4.3(a)(2d ed.1980), when a jury asks for information during deliberations, an additional instruction is generally required unless: (1) the jurors can be adequately informed by directing their attention to some portion of the original instructions; (2) the request concerns matters not in evidence or questions which do not pertain to the law of the case; or (3) the request would call upon the judge to express an opinion upon factual matters that the jury should determine. *Leonardo v. People*, 728 P.2d 1252 (Colo. 1986).

Here, for purposes of the charge against defendant of possession of a controlled substance, the jury was initially given an instruction that defined "possession" as follows:

"Possession" as used in these instructions, does not necessarily mean ownership, but does mean the actual, physical possession, or the immediate and knowing dominion or control over the object or the thing allegedly possessed. "Possession" need not be exclusive, provided that each possessor, should there be more than one, actually knew of the presence of the object, or thing possessed, and exercised actual physical control or immediate, knowing dominion or control over it.

During deliberations, the jury sent a note stating: "Could we have clarification on the 'knowing dominion' section of the possession definition?"

The court met with counsel, suggested referring the jurors back to the original instructions, but invited other suggestions from both sides. Defense counsel first proposed that the court give the jury a "mere presence" instruction, based on *People v. Simien*, 671 P.2d 1021 (Colo.App.1983), instructing the jury that "the guilt of a defendant cannot be established by mere presence at the scene of the crime even with knowledge that a crime is being committed." The trial court stated that *Simien* was inapposite because it was concerned with the presence of a defendant at the scene of an offense, and had nothing to do with possession of a substance by a defendant.

Defense counsel then tendered a copy of various dictionary definitions of "dominion." The trial court noted that none of the many definitions of "dominion" seemed appropriate in the context of the case, and that the definition proposed by defendant "absolute ownership" was an incorrect statement of the law. The court offered to refer the jury specifically to the definition of "possession" that had been given to them, noting that definition had been approved in numerous appellate decisions. Defense counsel stated that it would be preferable simply to refer the jury back to the original package of instructions. The court then responded to the jury's note as follows: "You have received all of the Court's instructions of law and applicable definitions."

 We conclude that the trial court did not abuse its discretion in referring the jury back to the original instructions rather than providing additional information in response to its question. In contrast to *Leonardo v. People*, *supra*, on which defendant relies, the jury's question did not demonstrate a "fundamental misunderstanding" of the instructions that had been given to it, although it sought additional clarification as to one part of one instruction. As the trial court correctly noted, the definition of "possession" given to the

jury had been approved on several occasions; for example, in *Duran v. People,* 145 Colo. 563, 567, 360 P.2d 132, 134 (1961), the supreme court found a substantially similar definition of possession to have "adequately and correctly advised the jury as to the full legal meaning of the word 'possession,'" and held that it was thus proper to refuse the defendant's tendered additional instruction on the issue.

Moreover, providing additional instruction as requested by defendant would potentially have run afoul of the ABA Standards discussed in *Leonardo v. People, supra.* The "mere presence" instruction tendered by defense counsel was not applicable to the issues to be resolved by the jury in this case, and could have been more confusing than helpful. Further, choosing one of the varying and not entirely consistent dictionary definitions of "dominion" could have amounted to an expression of opinion by the court on a matter that was properly determinable by the jury. In these circumstances, it was not an abuse of discretion simply to refer the jury back to the original instructions. *See People v. Alexis,* 806 P.2d 929 (Colo.1991)(trial court properly referred jury back to original instructions, where providing jury with additional information or instructions would have been contrary to ABA Standards adopted in *Leonardo v. People* ).

The judgment is affirmed.

Judge CRISWELL and Judge CASEBOLT concur.