**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Romel A. TRUSTY, Defendant–Appellant.**

**No. 00CA0470.**

Colorado Court of Appeals, Div. V.

Nov. 8, 2001.

Rehearing Denied Dec. 27, 2001.

Ken Salazar, Attorney General, Cheryl Hone, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by JUDGE VOGT.

Defendant, Romel A. Trusty, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a schedule II controlled substance with intent to distribute. He also appeals his adjudication and sentence as a special offender. We affirm in part, reverse in part, and remand.

Defendant was arrested in his aunt's apartment in a public housing complex. Police officers entered the apartment with a key given to them by the manager of the complex after they had been advised that there might be unauthorized persons in the apartment. They discovered defendant in a shower and another man, J.H., in a bedroom. After initially arresting defendant for trespass, the police found crack cocaine in the pocket of his pants. Elsewhere in the apartment they found his pager and his wallet containing over $600 in cash.

Defendant was convicted of possession with intent to distribute. He was also adjudicated a special offender on a finding by the jury that the offense occurred within a public housing development.

## I.

Defendant contends that the trial court erred in refusing to suppress the cocaine, wallet, and pager seized by the police when they arrested him in his aunt's apartment. He asserts that the evidence should have been suppressed because: (1) his aunt did not consent to the officers' entry into her apartment; (2) the police lacked probable cause to arrest him for trespassing; and (3) the search of his pants exceeded the scope of a permissible pat-down search for officer safety purposes. We are not persuaded.

In reviewing a trial court's denial of a motion to suppress, we defer to that court's factual findings and reverse only where its conclusions are unsupported by its evidentiary findings or where it applied an erroneous legal standard. *Petersen v. People*, 939 P.2d 824 (Colo.1997).

### A.

Federal and state constitutional provisions protecting against unreasonable searches generally prohibit a warrantless entry into a person's home, whether to make an arrest or to search for specific objects. However, the prohibition against warrantless searches does not apply when voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises. *People v. McKinstrey*, 852 P.2d 467 (Colo.1993).

Whether consent was freely and voluntarily given is a question of fact to be determined in light of the totality of the circumstances. *People v. Herrera*, 935 P.2d 956 (Colo.1997).

Where a warrantless entry is based on third-party consent, the determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *People v. McKinstrey, supra,*

852 P.2d at 472 (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148, 161 (1990)).

Here, the evidence supports the trial court's finding that the police entered the apartment with the consent of defendant's aunt and of the on-site property manager, who had authority to consent to their entry.

Although defendant's aunt denied having given her consent, she admitted at the suppression hearing that she had asked the police and the manager to watch her apartment while she served a ninety-day jail term, because she was concerned that another nephew, J.J., was selling drugs from the apartment. Further, the property manager testified that the aunt had asked her to "keep an eye" on the apartment in the aunt's absence and, if any unauthorized person was in the apartment, to call the police. When the property manager saw people going in and out of the apartment while the aunt was in jail, she contacted the police, asked them to check the apartment for unauthorized persons, and gave them a key to enable them to do so.

Under the totality of the circumstances, the police officers had an objectively reasonable basis for believing that they were authorized by both the aunt and the property manager to enter the apartment.

### B.

We also disagree with defendant's contention that the police lacked probable cause to arrest him when they encountered him in the shower.

To be valid, a warrantless arrest must be supported by probable cause. Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to support a reasonable belief that a crime has been or is being committed by the person arrested. In determining whether there was probable cause to arrest, the totality of the circumstances known to the officer at the time of arrest must be considered. Because probable cause deals with probabilities and not certainties, it is sufficient if the officer reasonably believed

that the person arrested committed a crime. *People v. Cappelli*, 927 P.2d 832 (Colo.1996).

According to the testimony at the suppression hearing, the police understood that no one was allowed to be in the apartment and that, if someone was found, the tenant had directed them to arrest that person for trespassing. When they arrived at the apartment, they knocked at the door and identified themselves as police. Although they heard movement inside the apartment, no one came to the door. They therefore entered using the key given to them by the property manager and found defendant and another man in the apartment.

These circumstances were sufficient to support a reasonable belief by the officers that the men whom they encountered were trespassing. *See People v. Cappelli, supra.*

The circumstances also distinguish this case from *People v. Grazier*, 992 P.2d 1149 (Colo.2000), on which defendant relies. In *Grazier*, the basis for the police officers' belief that a burglary was in progress had disappeared—in part, because they were voluntarily admitted into the apartment in response to their knock—by the time they arrested the defendant in the shower. Here, the fact that people were in the apartment but not answering the door gave the police an additional basis for believing that the occupants were trespassers.

### C.

The record also supports the trial court's determination that the cocaine was discovered in plain view while the police officer was conducting a proper pat-down search of defendant's pants for officer safety purposes.

Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), police may conduct a pat-down weapons search if specific, articulable facts, taken together with inferences that may be drawn from those facts, give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity. This standard applies even where the search takes place in a home. *See People v. Mascarenas*, 972 P.2d 717 (Colo.App.1998).

Under the plain view doctrine, a police officer may seize a plainly visible object inadvertently encountered in the course of a lawful pat-down search if the officer has reasonable grounds to believe the object is incriminating. The latter requirement is satisfied if the incriminating nature of the evidence is immediately apparent to the searching officer. *See People v. Dumas*, 955 P.2d 60 (Colo.1998); *People v. Mascarenas, supra.*

When the police found defendant in the shower, defendant asked them if he could get dressed and pointed to a bedroom where his clothing could be found. An officer went to the bedroom, saw a pair of pants that appeared large enough to fit defendant, picked up the pants, and felt them for weapons. The officer testified at the suppression hearing that, in the course of the weapons search, he could see into the pants pocket and saw in it two bags of what he suspected to be crack cocaine.

After the discovery of the cocaine, as the police and defendant were leaving, defendant asked the officers to get his wallet and his pager, which were in another room of the apartment.

On these facts, the trial court did not err in ruling that the cocaine, the wallet, and the pager were not the products of an illegal search and in declining to suppress the evidence.

## II.

Defendant next contends that the trial court abused its discretion by excluding evidence of the criminal history and reputation of two alternative suspects. We disagree.

Trial courts have broad discretion in deciding the admissibility of evidence based on its relevancy, its probative value, and its prejudicial impact. Absent an abuse of discretion, a trial court's evidentiary rulings will not be disturbed on review. To constitute an abuse of discretion, exclusion of the evidence must have been manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993).

A defendant may prove his or her innocence by establishing the guilt of another person, including by proof of similar offenses committed by that person. *People v. Flowers*, 644 P.2d 916 (Colo.1982); *People v. Ornelas*, 937 P.2d 867 (Colo.App.1996).

Whether to admit such similar offense evidence offered by a defendant is determined on a case-by-case basis. In order for evidence of a crime committed by an alternative suspect to be admissible, the circumstances of both crimes, taken together, must be sufficiently similar to support a finding that the same person was probably involved in both. *People v. Perez*, 972 P.2d 1072 (Colo.App.1998).

The mere fact of an alternative suspect's conviction, standing alone, is insufficient to render the evidence admissible. Rather, if the details of the crimes are not distinctive or unusual enough to represent a "signature" of a single individual, and thus do not support a finding that the same individual was involved in all the transactions, a trial court does not abuse its discretion in refusing to admit the evidence. *See People v. Perez, supra* (no abuse of discretion in excluding evidence of alternative suspect's misdemeanor sexual assault conviction where defendant presented no evidence indicating any distinctive similarities between that crime and sexual assault crime with which he was charged); *People v. Ornelas, supra* (upholding exclusion of evidence that defendant's house guests had previously been convicted of drug-related offenses where defendant failed to demonstrate that details of those offenses were similar to details of offense with which he was charged).

In this case, defendant was allowed to introduce evidence and to argue that the cocaine might have belonged to one of two other persons. The jury heard testimony that J.H. was in the apartment when the police arrived but did not open the door, and that he had been identified by defendant as the person who had gotten the cocaine from a dealer across the street. It also heard that the bedroom in which the drugs were found was that of J.J., another nephew of defendant's aunt, who had been kicked out of the apartment because gang members had been

coming into his room, staying briefly, and then leaving. Defendant's aunt testified that J.J. wore baggy pants similar to those in which the cocaine was found.

■ The only evidence relating to these alternate suspects that the trial court excluded was evidence of their criminal histories and reputations. The court did not allow defendant to introduce evidence of J.J.'s reputation and character, or evidence that the reason his aunt had made him leave was that he was dealing drugs. It also did not allow defendant to introduce evidence that J.H. was a crack cocaine dealer with prior felony convictions for possession of crack cocaine and that he was arrested on a felony warrant on the night of defendant's arrest.

Because defendant proffered no evidence indicating any distinctive or unusual similarities between the offense with which he was charged and the prior offenses of J.H. and J.J., we cannot say that the trial court's decision to exclude evidence of their criminal histories amounted to an abuse of discretion.

Further, even if evidence of J.J.'s prior activities at the apartment were deemed relevant under the standards set forth above, it would have been within the trial court's discretion to exclude that evidence under CRE 403 on the basis that its probative value, considered in light of the alternative suspect evidence already admitted, was substantially outweighed by the countervailing considerations set forth in that rule. *See People v. Flowers, supra.*

## III.

Defendant contends that his conviction and sentence for a class three felony must be vacated because possession with intent to distribute a schedule II controlled substance is a class four felony under § 18–18–405(2)(a)(I), C.R.S.2001. A division of this court rejected that argument in *People v. Pierrie,* 30 P.3d 816 (Colo.App.2001). We agree with the analysis and the result in *Pierrie* and conclude that it is dispositive of this issue.

## IV.

Finally, defendant argues that his adjudication and sentence as a special offender must be reversed because the jury was not instructed to find, and the prosecution did not prove, that he intended to distribute crack cocaine to anyone within or on the grounds of the public housing development. We conclude that § 18–18–407(2)(a), C.R.S. 2001, the statute on which defendant's special offender conviction was based, requires such a showing, and thus we agree that the special offender conviction and sentence cannot stand.

Section 18–18–407(2)(a) states:

A defendant shall be a special offender if the defendant is convicted of selling, distributing, or possessing with intent to distribute any controlled substance in violation of section 18–18–405 to any person either within or upon the grounds of any ... school, or public housing development, or within one thousand feet of the perimeter of any such school or public housing development grounds....

### A.

■ In construing a statute, a court's primary task is to ascertain and give effect to the intent of the General Assembly. To do so, the court must first look to the language of the statute itself, giving the words their commonly accepted meaning and avoiding a strained or forced interpretation. When the language of the statute is clear, so that the legislative intent can be discerned with reasonable certainty, there is no need to resort to other rules of statutory construction. *See State v. Nieto,* 993 P.2d 493 (Colo.2000); *People v. Shipley,* 22 P.3d 564 (Colo.App. 2001)(*cert. granted* May 14, 2001).

■ If the General Assembly's intended meaning of a phrase is doubtful, the court should consider the language in the context of the statute and by reference to the meaning of words or phrases associated with the phrase at issue. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995); *Sandoval v. Archdiocese of Denver,* 8 P.3d 598 (Colo.App.2000).

When the statutory language is susceptible of more than one reasonable interpretation, leading to different results, the statute is ambiguous. In that event, a court must look beyond the language and consider other factors, such as the statute's legislative history and the objective sought to be achieved by the legislation. *See State v. Nieto, supra; see also* § 2-4-203(1), C.R.S. 2001.

If, after the court has employed the various aids to statutory construction, it is still unable to discern controlling legislative intent, the rule of lenity requires that the statute be construed favorably to the accused. *People v. Pierrie, supra.*

### B.

#### 1.

Applying these principles to the issue before us, we first consider the language of § 18-18-407(2)(a).

Defendant contends that the plain language of § 18-18-407(2)(a) requires a showing that the accused intended to distribute the controlled substance to a person in or on the grounds of the school or public housing development. The People respond that defendant's construction of § 18-18-407(2)(a) would "defeat the law's grammatical structure"; that the identity, status, or location of an intended buyer is irrelevant under the clear language of the statute; and that it need only be shown that, while within or on the grounds of a school or public housing development, the accused possessed a controlled substance with the intent to distribute it to any person.

We conclude that the statute is reasonably susceptible of either interpretation.

If we focus solely on the statutory language, the meaning of the statute turns on whether—as the People contend—the phrase "to any person" is to be read in isolation as the indirect object of "distribute," or whether—as defendant contends—"to any person" is not to be read in isolation but as limited or qualified by the geographic reference that immediately follows it ("within or upon the grounds of any ... public housing development").

Contrary to the People's contention, defendant's reading of the statute does not defeat its grammatical structure. Rather, it is consistent with the principle that the meaning of a word or phrase may be ascertained by reference to the meaning of other words or phrases associated with it, *see Sandoval v. Archdiocese of Denver, supra; see generally* 2A N. Singer, *Statutes and Statutory Construction* § 47:16 (6th ed.2000), and accords with the requirement that consistent effect be given to all parts of a statute. *See People v. One 1967 Ford Mustang Convertible*, 781 P.2d 186 (Colo.App.1989).

Section 18-18-407(2)(a) provides enhanced penalties for three separate drug offenses committed on or near the grounds of schools or public housing developments. For purposes of the first two offenses—selling or distributing controlled substances—the indirect object phrase ("to any person") is necessarily qualified by the geographic reference that follows. Selling or distributing "to any person," alone, does not bring the offender within the statute; rather, it must be shown that the offender was selling or distributing "to any person either within or upon the grounds of any ... school, or public housing development" or within one thousand feet of their perimeter.

To give consistent effect to the "to any person" phrase when it is used as the indirect object of the third offense—"possessing with intent to distribute"—the phrase likewise should be read as qualified by the geographic reference that follows, not read in isolation from that reference.

Although the grammatical structure of the statute thus appears to support defendant's reading of it, the People find support for their interpretation of the statute in cases from other jurisdictions that have concluded that, under their "schoolyard statutes"—that is, statutes enhancing penalties for drug offenses committed within or near schools—the location of the intended buyer of the drugs is irrelevant when the conviction is for possession with intent to distribute.

We conclude that these cases are of limited usefulness here, given the dissimilarities in the wording of the various statutes. We note, however, that courts construing the federal schoolyard statute, 21 U.S.C. § 860, have reached divergent conclusions. Analyzing the federal cases, one commentator has observed that the courts have been more likely to uphold enhanced punishment where the defendant convicted of possession with intent to distribute was a "permanent resident," involved in prolonged, established, and substantial drug-related activities within the school zone. Conversely, courts have interpreted the schoolyard statute narrowly where, as here, the defendant was a "transient" offender, whose drug activities near schools were for short periods of time and involved a less established connection to the school zone. *See* Sonja R. West, Comment, *"Possessing with Intent to Distribute" Under the Schoolyard Statute*, 64 U. Chi. L.Rev. 1399 (Fall 1997).

In sum, we are not able to discern the intent of the General Assembly with reasonable certainty from the statutory language, and we conclude that other courts' interpretations of their statutes provide little if any guidance on this issue. Because the language of § 18–18–407(2)(a) is reasonably susceptible of both defendant's interpretation and the People's interpretation, it is ambiguous, and we must look to factors beyond the statutory language to determine its meaning.

### 2.

We next consider the legislative history of § 18–18–407(2)(a) to determine whether it supports either party's proposed construction of the statute.

The Uniform Controlled Substances Act of 1992 included two sections providing for enhanced penalties for drug use or drug transactions in school zones. *See* Colo. Sess. Laws 1992 ch. 71, § 18–18–407(2)(a) at 363 ("Upon a conviction for a violation of section 18–18–404 or 18–18–405, if the defendant unlawfully used any controlled substance in violation of section 18–18–404 or sold or distributed any controlled substance in violation of section 18–18–405 either within or upon the grounds of any … school … the defendant shall be a special offender") and § 18–18–405(4)(a) at 357 (providing enhanced penalty for "knowingly dispensing, selling, distributing, or possessing with intent to dispense, sell, or distribute a controlled substance to a person under the age of eighteen years either within or upon the grounds of any … school").

In 1993, the General Assembly amended § 18–18–407(2)(a) to add the phrase "or public housing development" to the schools included in the prior version of the statute. It also amended § 18–18–405(4)(a) to add a reference to public housing developments and to change the phrase "a person under the age of eighteen years" to "any person." Colo. Sess. Laws 1993, ch. 216, §§ 18–18–405(4)(a), 18–18–407(2)(a) at 972.

Legislative history indicates that the intent of the 1993 amendments was to enhance penalties for drug dealing in public housing complexes. Representative Hernandez, a sponsor of the legislation, stated that the sponsors' "number one priority" was "trying to move drug dealing outside public housing developments." Hearings on H.B. 1085 before the House Judiciary Committee, 59th General Assembly, First Session (Feb. 4, 1993). At the same hearing, a representative of the Denver Police Department explained that the amendment to substitute "any person" for "a person under eighteen years" would facilitate police efforts and help ensure convictions where sales of drugs were made to undercover police on school or public housing grounds.

In 1997, the General Assembly repealed § 18–18–405(4)(a) and amended § 18–18–407(2)(a) as follows, deleting the struck words and adding the capitalized words:

18–18–407. Special offender. (2)(a) ~~Upon a conviction for a violation of section 18–18–404 or 18–18–405, if~~ A DEFENDANT SHALL BE A SPECIAL OFFENDER IF the defendant ~~unlawfully used any controlled substance in violation of section 18–18–404 or sold, or distributed~~ IS CONVICTED OF SELLING, DISTRIBUTING, OR POSSESSING WITH INTENT TO DISTRIBUTE any controlled substance in violation of section 18–18–405 TO ANY PERSON either within or upon the

grounds of any ... school, or public housing development, or within one thousand feet of the perimeter of any such school or public housing development grounds....

Colo. Sess. Laws 1997, ch. 264 at 1544.

The legislative history of § 18–18–407(2)(a) does not definitively resolve the issue presented here. If anything, however, it appears to support defendant's construction of the statute. Statements made in 1993 indicate that the General Assembly's focus was on preventing the introduction of drugs into public housing developments by enhancing penalties for persons who engaged in drug transactions—including transactions involving undercover police—at those locations. The fact that the 1997 amendment deleted mere "use" of a controlled substance as an offense warranting special offender sentencing further suggests that the General Assembly did not intend to enhance penalties for offenses that did not involve a drug transaction or intended transaction at or near a public housing development.

### 3.

■ We thus conclude that both the statutory language and the legislative history either tend to support defendant's proposed construction of the statute or, at a minimum, do not provide support for the People's interpretation. We further recognize that, to the extent an unyielding ambiguity remains, the rule of lenity requires us to construe the statute favorably to defendant. *See People v. Shipley, supra; People v. Pierrie, supra.* Accordingly, we hold that § 18–18–407(2)(a) requires a showing that the defendant intended to distribute the controlled substance to a person who was within or on the grounds of the school or public housing development.

### C.

Because the jury was not instructed to find, and the evidence did not establish, that defendant intended to distribute the cocaine to someone in or on the grounds of the public housing development, defendant's adjudication and sentence as a special offender must be reversed.

■ We note at the outset that defendant did not object to the jury instruction or the sufficiency of the evidence on the grounds he raises on appeal. However, because the asserted error is of constitutional dimension, *see Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), defendant is nevertheless entitled to reversal unless we are convinced that it was harmless beyond a reasonable doubt. *See Blecha v. People,* 962 P.2d 931 (Colo.1998).

The jury was instructed here that the elements of the special offender count were:

(1) During the commission of the crime of possession with intent to distribute a controlled substance,

(2) the defendant,

(3) was either within or upon the grounds of any public housing development as defined in these instructions.

In accordance with this instruction, the jury made a special finding that defendant "was either within or upon the grounds of any public housing development during the commission of the crime of possession with intent to distribute a controlled substance."

The instruction did not comport with § 18–18–407(2)(a) in that it did not require the jury to find that defendant intended to distribute the cocaine to someone within or on the grounds of the public housing development. Under the facts of this case, it cannot be said that this omission was harmless beyond a reasonable doubt.

■ Further, the evidence was insufficient to support defendant's special offender adjudication. Defendant had in his pocket fifty to one hundred rocks of crack cocaine, with a street value of at least $900. Viewed in the light most favorable to the prosecution, the presence of that amount of crack cocaine, together with the pager and money found in defendant's possession, was sufficient to support a conviction for possession with intent to distribute. *See People v. Ramirez,* 997 P.2d 1200 (Colo.App.1999), *aff'd by an equally divided court,* 43 P.3d 611 (Colo.2001).

However, this evidence did not establish that defendant intended to distribute the co-

caine to anyone within the public housing complex. Defendant was only an occasional overnight guest at his aunt's apartment. There was no evidence that he had conducted any drug-related activities within or on the grounds of the public housing complex or that he had stored any quantities of drugs there. In these circumstances, we cannot conclude that the evidence, even viewed in the light most favorable to the prosecution and giving the prosecution the benefit of all reasonable inferences from it, was sufficient to support defendant's adjudication as a special offender.

The judgment of conviction for possession of cocaine with intent to distribute is affirmed. Defendant's adjudication and sentence as a special offender is reversed, and the case is remanded for resentencing.

Judge CASEBOLT and Judge NIETO concur.