# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 13, 2007 Session

## STATE OF TENNESSEE v. PAMELA A. INGHRAM

**Appeal from the Circuit Court for Rutherford County**
**No. F-57442     J. S. Daniel, Senior Judge**

---

**No. M2006-00818-CCA-R3-CD - Filed July 11, 2007**

---

The Appellant, Pamela A. Inghram, presents for review a certified question of law pursuant to Tenn. R. Crim. P. 37(b)(2)(i). Inghram pled guilty to Class E felony possession of marijuana with intent to sell or deliver and received an eighteen-month sentence, which was suspended. As a condition of her guilty plea, she explicitly reserved a certified question of law challenging the denial of her motion to suppress evidence, specifically drugs and drug paraphernalia, found in her home. Inghram argues that the warrantless entry into her home by police in response to a burglar alarm call was without legal authority. After review, we conclude that exigent circumstances justified police entry and the subsequent seizure of the contraband, which was observed in plain view. Accordingly, we affirm the judgment of the Rutherford County Circuit Court denying the motion to suppress.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Richard McGee and James O. Martin, III, for the Appellant, Pamela A. Inghram.

Robert E. Cooper, Jr., Attorney General and Reporter; Brian Clay Johnson, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Trevor H. Lynch, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Around 9:00 a.m. on December 17, 2004, Security Services, a private alarm monitoring company, notified the Rutherford County Sheriff's Department that the burglar alarm at 2910 Johnson Lane had been activated and that motion was detected inside the home. Detective Heather Greenwood was dispatched to the scene at 9:21 a.m. and, upon her arrival, found Deputy King already at the scene. In checking the perimeter of the home, Greenwood observed a dirty shoe print on the bottom portion of the front door and saw that the glass in the back door of the home had been

broken out. The two officers then informed dispatch of the signs of forced entry and that they would be entering the residence to "clear it." At this point, dispatch notified the homeowners of the situation. Initially, the Appellant's husband was contacted, but he was unable to respond. The Appellant, who was working in Nashville, was then notified, and she stated that she would meet the officers at the residence.

Upon entering the residence, Greenwood and King went through each room of the home to ensure that no one was present and observed that nothing appeared "ransacked," with the exception of the master bedroom. While in the living room, the two did observe "seeds, marijuana stems, . . . [s]cissors[,] [p]lastic baggies, . . . [a] plate with some residue on it[,] [a] half smoked marijuana or hand-rolled type cigarette[,] [and] some rolling papers" on tables. In the bedroom, several items were strewn around as if someone had been looking for something, and the mattress was displaced. Additionally, a dresser drawer was open, and the officers observed a bluish "zip-lock type" bag containing marijuana, later determined to be 17 grams in weight.

Shortly thereafter, at approximately 10:00 a.m., the Appellant arrived at her home and was informed of the signs of forced entry. She and Greenwood discussed prior burglaries which had occurred at the home and which Greenwood had responded to. Greenwood then asked the Appellant to escort her and Deputy King through the home and conduct an inventory to determine if anything was missing. During the "walk through," the Appellant noted that nothing appeared to be disturbed except the bedroom area and the broken glass in the back door. At this point, Greenwood informed the Appellant of the marijuana which she had observed in the drawer in the bedroom. Initially, the Appellant denied any knowledge of the drugs and stated that whomever had burglarized the home must have "planted" them. When Greenwood expressed doubt as to the plausibility of that theory, the Appellant then stated that perhaps her husband and his friends had been using marijuana in the home after she left for work. In response to Greenwood's questions regarding her husband, the Appellant voluntarily admitted selling marijuana to help out family members during the holiday season. When asked if there was any more marijuana present in the home, the Appellant replied that there might be a smaller bag in the residence but that she was not sure where it was.

Greenwood subsequently gave the Appellant a consent to search form, which was explained to the Appellant by the detective and read by the Appellant. Prior to signing the form, the Appellant also insisted on calling her husband because she stated the property was in his name. After the consent to search form was signed, Greenwood and King began searching the residence in various areas because the Appellant said she did not recall where the additional drugs were located. After some initial searching, Greenwood again asked the Appellant if she knew where the drugs were located and explained that she did not want to search the entire home unnecessarily. At this point, the Appellant told the officers that "there may be half a pound or a pound in the kitchen in the cabinet[,]" and she pointed to a particular cabinet. In the cabinet, inside an electric skillet, Greenwood found a large bag of marijuana, later determined to contain 310.5 grams. In view of the quantity of drugs recovered, Greenwood requested narcotics detectives to respond to the scene and ceased all questioning of the Appellant. Detective Elrod arrived on the scene soon thereafter, and the Appellant was advised of her *Miranda* rights and gave a statement to the police.

On August 3, 2005, a Rutherford County grand jury returned a two-count indictment against the Appellant charging her with: (1) possession of marijuana with the intent to deliver or sell; and (2) possession of drug paraphernalia. In October 2005, the Appellant filed a motion to suppress evidence, specifically the marijuana and drug paraphernalia, seized during the warrantless search of her home, as well the statements made by the Appellant during the search. A hearing was held on the motion on January 26, 2006, after which the court granted the Appellant's motion with regard to her written statement but denied the motion in all other regards. Thereafter, on March 21, 2006, the Appellant pled guilty to possession of marijuana with intent to sell or deliver, and the possession of drug paraphernalia charge was dismissed. As provided by the plea agreement, the Appellant received an eighteen-month sentence, as a Range I offender, which was suspended, with the Appellant being placed on supervised probation. However, as part of the plea agreement, the Appellant explicitly reserved a certified question of law, which is now before this court on appeal.

**Analysis**

On appeal, the Appellant seeks review of the following certified question of law:

> . . . [W]hether exigent circumstances or other legal justification existed which allowed law enforcement officers to enter the [Appellant's] residence without a search warrant and prior to receiving consent to enter from the [Appellant] or did the officer's entry and subsequent search of the residence violate the [Appellant's] right against unreasonable searches and seizures as guaranteed by Article 1 § 7 of the Tennessee Constitution and the Fourth Amendment to the United States Constitution. The factual basis forming this question is contained in the transcript of the suppression hearing conducted on January 26, 2006.

## I. Certified Question of Law

Rule 37(b)(2)(i), Tennessee Rules of Criminal Procedure, allows an appeal from a guilty plea in certain cases under very narrow circumstances. An appeal lies from a guilty plea, pursuant to Rule 37(b)(2)(i), if the final order of judgment contains a statement of the dispositive certified question of law reserved by the Appellant, wherein the question is so clearly stated as to identify the scope and the limit of the legal issues reserved. *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The order must also state that the certified question was expressly reserved as part of the plea agreement, that the State and the trial judge consented to the reservation, and that the State and the trial judge are of the opinion that the question is dispositive of the case. *Id.* If these circumstances are not met, this court is without jurisdiction to hear the appeal. *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996). The burden is on the Appellant to see that these prerequisites are in the final order and that the record brought to the appellate court contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. *Id.*

An issue is dispositive when this court must either affirm the judgment or reverse and dismiss. *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). That is to say that, if we

should find the Appellant's position correct, there would be no case to prosecute, as there would be no proof to convict. In the case under review, the parties and the trial court certified that the issue was dispositive of the case; however, an appellate court is not bound by the trial court's determination that an issue is dispositive. *Preston*, 759 S.W.2d at 651; *see also State v. Oliver*, 30 S.W.3d 363, 364 (Tenn. Crim. App. 2000). Rather the court must make an independent determination of the dispositive nature of the question and must deny appellate review if the court determines that the question is not dispositive. *Id*.

Despite certification of the question at the trial level, the State now argues on appeal that the question presented is not properly certified. Specifically, the State asserts that the Appellant "has failed to perfect the question because it fails to clearly identify the scope and limits of the legal issue sought to be reserved for review." The State asserts that the Appellant, in violation of *Preston*, has failed to identify in the statement of the certified question the reasons relied upon at the suppression hearing, instead referring this court to the transcript of the hearing. The Appellant contends, however, that the question was properly certified as the issue is clearly identified in the statement of the certified question, that being whether the warrantless entry and search of the Appellant's residence was justified by the exigent circumstances exception to the warrant requirement.

We are constrained to note initially that the question, as presented, is somewhat broad in its scope and fails to identify which portion of the search that the Appellant is challenging. Nonetheless, we conclude that the record before is sufficient to allow meaningful review of the question presented. Thus, the requirements of Rule 37 have been met, and, accordingly, we proceed to address the merits of the Appellant's argument with regard to her motion to suppress.

## II. Motion to Suppress

### a. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001) (citing *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The trial court, as the trier of fact, is able to assess the credibility of witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). The Appellant bears the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. *Odom*, 928 S.W.2d at 23.

### b. Warrantless Entry/Exigent Circumstances

Both the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution provide protection for citizens against "unreasonable searches and seizures." Our supreme court has explained that "the purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997) (quoting *Camara v. Municipal Ct.*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)), and that "'Article I, section 7 is identical in intent and purpose with the Fourth Amendment.'" *Id*. (quoting *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (citation omitted)). The court has further recognized that a warrantless search is presumed unreasonable under both the federal and state constitutions, and evidence seized from the warrantless search is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *State v. Simpson*, 968 S.W.2d 776, 780 (Tenn. 1998) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971)). Accordingly, a trial court begins with the presumption that a warrantless search or seizure is unreasonable, and the burden is on the State to demonstrate that one of the exceptions to the warrant requirement was applicable at the time of the search or seizure.

The United States Supreme Court has recognized "that a warrantless entry by criminal law enforcement may be legal when there is compelling need for official action and no time to secure a warrant." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S. Ct. 1942, 1949 (1978) (citations omitted). One such compelling need, and a noted exception to the warrant requirement, can be found under the "exigent circumstances" doctrine. However, generally, "[e]xigent circumstances are limited to three situations: (1) when officers are in 'hot pursuit' of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; and (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." *State v. Donald Ray Lovell*, No. M2002-02379-CCA-R3-CD (Tenn. Crim. App. at Nashville, Sept. 17, 2003) (citations omitted).

The State bears the burden of demonstrating "exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S. Ct. 2091, 2098 (1984). An objective standard is used to determine the reasonableness of the officer's belief that an emergency situation existed at the moment of entry. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880 (1968). The inquiry is whether the facts available to the officer at the moment of entry would 'warrant a man of reasonable caution in the belief' that the action taken was appropriate. *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 288 (1925). The reasonableness of that belief must be judged on the basis of the officer's knowledge at the time he or she entered a defendant's residence. *See People v. Thompson*, 770 P.2d 1282, 1285 (Colo. 1989) (citing *People v. Malczewski*, 744 P.2d 62, 66 (Colo. 1987)). In determining whether the officer acted reasonably, this court must consider the totality of the circumstances, including the personal observations of the trained police officer and the rational inferences and deductions therefrom. *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). As such, "the question is whether 'the officers would have been derelict in their duty had they acted otherwise.'" *State v. Ronald E. Wade*, No. M2004-02888-CCA-R3-CD (Tenn. Crim. App. at

Nashville, Mar. 15, 2006) (citations omitted). "This means, of course, that it 'is of no moment' that it turns out there was in fact no emergency." *Id*.

As noted, the Appellant argues that no exception, specifically the exigent circumstances exception, to the warrant requirement existed to allow Greenwood and King to enter the residence in response to the burglar alarm call prior to the Appellant's arrival. The Appellant asserts that none of the three situations under which exigent circumstances exist are present in this case. The trial court, however, found that exigent circumstances existed which allowed the officers' to legally enter the residence. The court specifically found:

> . . . [T]hese officers are called to a burglary scene. They're dispatched there for the purpose of making that investigation.

> They find tangible evidence that is supportive of a forced entry in the form of a shoe mark on the front door. The rear door has been smashed. Glass is everywhere, and the door has been broken in the rear of the premises. They are then in position to make, in my opinion, an entry to this house to protect the homeowners, to protect themselves, and to make a protective sweep of this premises to ensure that the burglar is not still in the premises or those that might be injured by an intrusion into their home are not there and injured.

> So they have that right, and after they enter the premises, they have the right to clear the entire dwelling. And in that process they observe in plain view evidence of marijuana paraphernalia, drug paraphernalia, seeds, and other stems consistent with marijuana. In the bedroom they find in plain view in a dresser drawer that's left open a bag of what appears to be marijuana.

> So having made that determination, then the homeowner arrives. In this case the homeowner is advised that they have a right to come through the home to observe and see if there's anything missing. And [the Appellant] is presented an opportunity to see how the house is in disarray. She is asked as a part of the continuing investigation about findings that were observed by the officer, including these that we've just discussed, and she makes voluntary statements that are incriminating. First inconsistent statements, and then in a nonresponsive way makes statements that she has in fact sold drugs.

> She's also advised about the consent to search, and she consents voluntarily at 10:30 in the morning to the search of the premises for the balance of the marijuana that's ultimately found. Once that marijuana is found, which if my notes are correct, the officer testified that the consent to search occurred at 10:30 and that at about 10:46, the larger volume of marijuana had been discovered, and a radio communication was being made or was made to the narcotics division to respond for further inquiry.

From and after that point in time, I believe and find that [the Appellant] was in custody. And after listening to the testimony, I think that her statement does not comport with Miranda. I'm finding that all the evidence up through the seizure of the 310 grams of marijuana is capable of introduction as well as her statements leading up to that discovery.

In the present appeal, the focus centers on the reasonableness of the officers' belief that an emergency situation existed which required entry into the Appellant's residence without first obtaining a search warrant or waiting for the arrival of the Appellant. As noted, the reasonableness of the officers' belief must be judged on the basis of their knowledge at the time they entered the residence. *See Thompson*, 770 P.2d at 1285. We would further note that, despite the Appellant's assertion to the contrary, multiple courts in this state, as well as in other jurisdictions, have concluded that officers responding to the scene of an alleged burglary and find signs of forced entry are justified in entering the residence without a warrant. *See Donald Ray Lovell*, No. M2002-02379-CCA-R3-CD (finding exigent circumstances justified search of residence when police responded to 911 call from defendant to report robbery; exigent circumstances element was met by the uncertainty of whether or not any criminals remained in the home, and by extension, the uncertainty of whether the officers and others present were faced with immediate threat); *State v. Juanita Elaine Findley*, No. 03C01-9406-CR-00194 (Tenn. Crim. App. at Knoxville, Mar. 14, 1995) (reasonable for firefighters on scene of yard fire to notify police of door ajar on residence; upon arrival, officer was justified in entry, after he looked through open door and saw house in state of obvious disarray, to determine whether burglar was still present or whether there was an injured occupant); *see also United States v. Brown*, 449 F.3d 741 (6th Cir. 2006) (exigent circumstances justified warrantless entry following officer's dispatch in response to burglar alarm call from security company and, upon arrival, found basement door ajar, though no signs of forced entry); *United States v. Johnson*, 9 F.3d 506 (6th Cir. 1993) (finding probable cause and exigent circumstances justified warrantless search when officers responded after neighbor reported a burglary and arrived to find a broken window and two individuals inside); *United States v. Estese*, 479 F.2d 1273 (6th Cir. 1973) (holding warrantless entry into home justified after police received radio call reporting breaking and entering and arrived on scene to find a pried open door); *People v. Duncan*, 720 P.2d 2 (1986) (finding exigent circumstances when officer responded to radio call that burglary was in progress or had just occurred and, upon arrival, found a box containing a television and other items on the ground beneath an open back window).

Examination of the facts demonstrates that the officers had probable cause upon their arrival at the scene to believe that a burglary was in progress or had occurred and that exigent circumstances existed to justify the warrantless entry. The proof established that officers were dispatched to the Appellant's home in response to a call from a burglar alarm monitoring company which reported that the Appellant's alarm had been activated and that motion was detected inside the home. Upon arrival at the scene, moments later, no one appeared to be home. An inspection of the outside of the premises was conducted and revealed a shoe print on the front door and a broken glass in the back door, indicating forced entry into the home. Greenwood specifically testified that while she did not see or hear anyone in the residence, she was unable to clearly see inside the entire residence from

outside. Moreover, as Greenwood testified, it was reasonable to assume that if burglars were inside the home, they would remain quiet and out of sight when they became aware of a police presence. It was also established that prior burglaries had occurred at this residence and that Greenwood was aware of this, as the Appellant testified that Greenwood had previously responded to such calls. Based upon these facts, known to the officers at the time they entered the Appellant's residence without a warrant, there was probable cause for the officers to believe that a burglary had been or was being committed. The officers were authorized to enter the home to secure the residence for their own safety, as well as to ensure that no intruders remained inside. As previously observed, the officers' conduct is judged from an objective viewpoint, *i.e.*, what a reasonable law enforcement officer would have done under the same or similar circumstances. Indeed, the officers would have been derelict in their duty if they had failed to enter and secure the residence in this case.

Having determined that exigent circumstances justified their entry and that they were lawfully inside the home, the officers were warranted in seizing evidence found within the bounds of the protective sweep under the authority of the plain view doctrine:

> The plain view doctrine provides that, under certain circumstances, the police may seize evidence in plain view without a warrant. Under the federal constitution, prerequisites to the application of the plain view doctrine include: (1) the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen; (2) the officer had a lawful right of access to the evidence; and (3) the incriminating character of the evidence was "immediately apparent," i.e., the officer possessed probable cause to believe that the item in plain view was evidence of a crime or contraband. Accordingly, when an officer enters private premises pursuant to exigent or emergency circumstances, the officer may generally seize any apparently incriminating items located on the premises in plain view. . . .

*State v. William T. Davis*, No. M2004-03060-CCA-R3-CD (Tenn. Crim. App. at Nashville, Sept. 15, 2005) (citations omitted) (quoting *State v. Coulter*, 67 S.W.3d 3, 43 (Tenn. Crim. App. 2001)). The record supports the trial court's findings that the items of drug paraphernalia found in the living room and the marijuana found in the open dresser drawer in the bedroom were in "plain view" and that their character was immediately apparent. Thus, the evidence was admissible.

As an aside, we are constrained to note that the Appellant, in her brief, also asserts: (1) that she was illegally seized; and (2) that the consent to search the residence was improperly obtained. However, these issues are not contained within the certified question before us and, indeed, those issues are premised upon the presumption that an illegal warrantless entry occurred. As noted *supra*, we conclude that police entry was authorized.

**CONCLUSION**

Based upon the foregoing, the judgment of the Rutherford County Circuit Court denying the Appellant's motion to suppress is affirmed.

_____
DAVID G. HAYES, JUDGE