The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Jesus Xavier PEREZ, Defendant–
Appellant.

No. 96CA1587.

Colorado Court of Appeals,
Div. II.

Sept. 3, 1998.

Rehearing Denied Oct. 8, 1998.

Certiorari Denied March 1, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Peter J. Cannici, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Jesus Xavier Perez, appeals the judgment of conviction entered on jury verdicts finding him guilty of attempted extreme indifference murder, sexual assault on a child by one in a position of trust, and sexual assault on a child by a pattern of abuse. We reverse the conviction for attempted extreme indifference murder and affirm the convictions for sexual assault.

Defendant had custody of five children, four of whom were his children from a previous marriage. The fifth and oldest child was his stepdaughter.

Defendant was diagnosed as being HIV positive and told that he had less than two years to live. Approximately a year later, he made arrangements for the children to be raised by two women with whom he was acquainted.

After the children began living in their new home, one of the women became concerned about the stepdaughter's behavior. She asked the girl, who was ten years old, whether anyone had "messed with her." The girl disclosed that defendant on several occasions had fondled her and made her engage in masturbation, oral sex, and intercourse.

The woman contacted social services. The stepdaughter repeated the story to a caseworker and, later, to an examining doctor.

Defendant was initially charged with the two counts of sexual assault. However, because he had allegedly committed the sexual assaults while knowing he was HIV positive, the prosecutor amended the information to add the count of attempted extreme indifference murder.

At trial, the girl testified consistent with her earlier statements. Defendant did not challenge the assertion that the girl had been sexually assaulted. Instead, his theory of defense was that he was not the perpetrator and that the girl had been coached to make the allegations. The jury found to the contrary.

I.

Defendant first contends the trial court erred in denying his motion for judgment of acquittal on the attempted extreme indifference murder count. He asserts that, because his alleged conduct had been directed specifically at his stepdaughter, the evidence failed to establish the "universal malice" necessary

for a conviction of attempted extreme indifference murder. We agree.

The crime of extreme indifference murder requires that: (1) under circumstances evidencing an attitude of universal malice manifesting an extreme indifference to the value of human life generally, (2) the defendant knowingly engages in conduct which creates a grave risk of death to another person, or persons, (3) and thereby causes the death of another. Section 18–3–102(1)(d), C.R.S.1997.

"Universal malice" is "that depravity of the human heart which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim." *Longinotti v. People,* 46 Colo. 173, 181, 102 P. 165, 168 (1909). It is evinced by acts that are calculated to put the lives of many persons in danger, without being aimed at anyone in particular. *People v. Ramos,* 708 P.2d 1347 (Colo.1985). Thus, to support a conviction for extreme indifference murder, the killing conduct must be "of a type which is not directed against a particular person at all." *People v. Jefferson,* 748 P.2d 1223, 1233 (Colo.1988).

Here, defendant knew the victim and his conduct was directed toward that particular person. Hence, evidence of the element of "universal malice" was lacking. *See People v. Jefferson, supra; cf. People v. Atkins,* 844 P.2d 1196, 1199 (Colo.App.1992)("[I]f the evidence establishes that a perpetrator possessed the specific intent to cause the death of the person whom he killed, then the death of that individual cannot support a conviction under the extreme indifference murder statute.").

We are not persuaded to the contrary by the holding of another division in *People v. Moore,* 902 P.2d 366 (Colo.App.1994), *aff'd on other grounds, Moore v. People,* 925 P.2d 264 (Colo.1996). In that case, the defendant and a group of his high school friends had initiated a fight with several soldiers. Some time after the fight ended, the defendant and his friends observed two other soldiers they did not know walking towards them. They attacked the soldiers, killing one of them and injuring the other. The division concluded that, because the jury could find the defen-

dant had indiscriminately attacked the next soldier who happened by, the defendant had properly been charged with extreme indifference murder.

Even if we were to agree with the division's conclusion in *Moore,* an issue we do not address, here it was undisputed that defendant's conduct was directed at a particular person he knew well, his own stepdaughter. Therefore, defendant's conviction for attempted extreme indifference murder cannot stand. *See People v. Jefferson, supra; cf. People v. Atkins.*

## II.

Defendant next contends the trial court erred in excluding evidence of an alternate suspect, the son of the woman who reported the sexual assaults. He asserts that, because the son was also living in the house with the two women and the children, defense counsel should have been allowed to introduce evidence that the son was on probation for a misdemeanor sexual assault. We disagree.

A defendant may prove his innocence by establishing the guilt of an alternate suspect. However, evidence that another person had an opportunity to commit the crime for which defendant is being tried is not sufficient. The defendant must prove that the other person committed some act directly connecting that person with the crime charged. *See People v. Armstrong,* 704 P.2d 877 (Colo.App.1985); *People in Interest of R.L.,* 660 P.2d 26 (Colo.App.1983).

This rule is premised on the need to place reasonable limits on collateral testimony and to avoid encouraging the jury to speculate. Thus, the evidence must create more than an unsupported inference, or a possible ground for suspicion. *People in Interest of R.L., supra.*

When the asserted direct connection is commission of a similar crime, the acts and circumstances of both crimes, taken together, must be sufficient to support a finding that the same person was probably involved in both transactions. *People v. Flowers,* 644 P.2d 916 (Colo.1982). The details of the two crimes must therefore be distinctive enough

to represent a "signature" of a single individual. *See People v. Ornelas,* 937 P.2d 867 (Colo.App.1996).

Here, defendant's proffered evidence would establish only that the son had a misdemeanor conviction for sexual assault. No evidence was presented indicating any distinctive similarities in the details of the crimes. In these circumstances, we cannot say the trial court abused its discretion in refusing to admit defendant's proffered evidence. *See People v. Flowers, supra; People v. Ornelas, supra.*

We likewise reject defendant's related argument that the court erred in precluding cross-examination of the woman concerning her son's juvenile adjudication. Because defendant failed to establish sufficient similarities between the two crimes to support an inference that the son had committed both, it follows that the jury could only speculate that the mother had coached the victim to incriminate defendant in order to protect her own son. Hence, in order to avoid the witness being forced to reveal embarrassing information that was tangential and of marginal relevance, the trial court did not abuse its discretion in limiting her cross-examination. *See People v. Flowers, supra; People v. Ornelas, supra; see also Merritt v. People,* 842 P.2d 162 (Colo.1992)(despite the Confrontation Clause, a trial court has wide latitude to place reasonable limits on cross-examination based on concerns about, for example, harassment, prejudice, or interrogation that is repetitive or only marginally relevant).

### III.

Defendant finally contends the trial court committed reversible error in admitting hearsay statements made by the victim to the physician who examined her. We disagree.

The physician testified that he elicited the statements from the girl, which included her description of defendant's actions that had caused pain and bleeding, to assist with his medical diagnosis, and defendant has not asserted the girl was too young to understand the purpose of the examination. *See* CRE 803(4); *cf. People in Interest of W.C.L.,*

650 P.2d 1302 (Colo.App.1982), *rev'd on other grounds,* 685 P.2d 176 (Colo.1984). Moreover, the physician's testimony was cumulative of testimony provided by the victim, the woman with whom the victim was residing, and the caseworker. Accordingly, we find no basis for reversal. *See People v. Robinson,* 874 P.2d 453 (Colo.App.1993); *People v. Valdez,* 874 P.2d 415 (Colo.App.1993).

The judgment of conviction for attempted extreme indifference murder is reversed. The remaining convictions are affirmed.

CRISWELL and NEY, JJ., concur.