2012 CO 72

The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Jeffrey Lee MARSHALL, Defendant–Appellee.

No. 12SA215.

Supreme Court of Colorado, En Banc.

Dec. 3, 2012.

---

Daniel H. May, District Attorney, Fourth Judicial District, Michael J. Allen, Deputy District Attorney, Doyle Baker, Deputy District Attorney, Colorado Springs, Colorado, for Plaintiff–Appellant.

Douglas K. Wilson, Public Defender, Cynthia J. Jones, Deputy Public Defender, Ruth Rosenthal, Deputy Public Defender, Colorado Springs, Colorado, for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

¶ 1 Pursuant to C.A.R. 4.1, the Prosecution challenges the trial court's order granting defendant Jeffrey Marshall's motion to suppress evidence obtained after the search of his backpack incident to his lawful arrest. We hold that *Arizona v. Gant*, 556 U.S. 332, 351, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), does not modify the well-established rule regarding searches of a person and containers on or near a person incident to arrest. Therefore we reverse the trial court's suppression order.

## I. Facts and Procedural History

¶ 2 On January 5, 2012, two uniformed officers of the Colorado Springs Police Department, Officer Acey and Officer Duran, went to Marshall's residence to serve a summons for his alleged indecent exposure. Upon arrival, the officers spoke with occupants of the residence and discovered that Marshall was expected home shortly and that he would be driving his girlfriend's Dodge Neon. The officers then waited in a nearby parking lot for Marshall's return.

¶ 3 About thirty minutes later, Marshall pulled into the parking lot. Marshall stepped out of the car carrying a black backpack. The officers approached Marshall to serve the summons. Officer Acey testified that he asked Marshall to put the backpack on the ground out of fear that Marshall could use it as a weapon; Marshall complied. The officers agreed that Marshall cooperated as they discussed the summons. Despite his apparent cooperation, Officer Acey was concerned that Marshall might run away. To assuage his fear, Officer Acey arrested Marshall on the indecent exposure charge.[1] After handcuffing Marshall, Officer Acey searched him and found a baggie of marijuana and two cell phones in his right front pants pocket. The officer then placed Marshall in the back of the squad car.

¶ 4 While Officer Acey placed Marshall in the squad car, Officer Duran opened Marshall's backpack and smelled marijuana. Officer Duran then searched Marshall's backpack and found six individual bags of marijuana weighing 7.4 grams total, an assortment of prescription pills, and a digital scale. Based on the items found in Marshall's backpack, the Prosecution charged Marshall with possession with intent to manufacture or distribute marijuana, possession of a schedule-three controlled substance, and five habitual criminal counts.

¶ 5 Marshall moved to suppress the evidence found in his backpack. After two suppression hearings, the trial court found that Marshall's arrest was valid because the officers had a summons that required fingerprinting and processing Marshall at the Colo-

---

1. Marshall does not challenge the legality of his  arrest.

rado Springs stationhouse. Nonetheless, the trial court concluded that the subsequent search of Marshall's backpack was illegal because Marshall was handcuffed and either in, or standing next to, the police car at the time of the search. The trial court reasoned that under *Gant*, 556 U.S. at 351, 129 S.Ct. 1710, the search incident to arrest exception did not apply because the exigencies discussed in that case that would justify a search—that the occupant is within reaching distance of the passenger compartment at the time of the search or that it is reasonable to believe the vehicle contains evidence of the offense of arrest—were absent.

¶ 6 Because *Gant* does not modify the well-established Colorado rule regarding searches of a person and containers on a person incident to arrest, we reverse the trial court's suppression order.

## II. Analysis

¶ 7 We agree with the Prosecution that the evidence in Marshall's backpack should not be suppressed because the officer conducted a valid search incident to arrest.[2] Therefore we reverse the trial court's order suppressing the evidence.

### A. Standard of Review

¶ 8 This Court's review of a suppression order necessitates analyzing both questions of law and questions of fact. *People v. Gothard*, 185 P.3d 180, 183 (Colo.2008). For factual matters, we defer to the trial court's findings and will not overturn those findings supported by the record. *People v. Pacheco*, 175 P.3d 91, 94 (Colo.2006). Legal conclusions, however, we review de novo. *Gothard*, 185 P.3d at 183. We will reverse the trial court where its interpretation or application of constitutional law is erroneous. *Id.; People v. Syrie*, 101 P.3d 219, 222 (Colo. 2004). Here, the trial court's factual findings are supported by the record. Therefore, we need only resolve the trial court's application of the law. *Syrie*, 101 P.3d at 222.

**2.** Because the search of Marshall's backpack was legal, we need not reach the issue of whether the contents of the search should be admitted under the doctrine of inevitable discovery. *See People v. Breidenbach*, 875 P.2d 879, 889 (Colo.1994)

### B. Search Incident to Arrest

¶ 9 The officers's search of Marshall's backpack occurred incident to Marshall's lawful arrest. The trial court, therefore, erred in suppressing the evidence discovered in the backpack. The United States Constitution protects individuals from unreasonable searches. U.S. Const. amend. IV. " '[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Gant*, 556 U.S. at 338, 129 S.Ct. 1710 (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)); *see People v. Revoal*, 2012 CO 8, ¶ 10, 269 P.3d 1238, 1240 (holding that a warrantless search is presumptively "unreasonable unless it is justified by one of the few, specifically established exceptions to the Warrant Clause of the Fourth Amendment"). Where no exception applies, the evidence obtained is inadmissible. *Syrie*, 101 P.3d at 222.

¶ 10 A search incident to a lawful arrest is one of the specifically established exceptions to the warrant requirement. *Pineda v. People*, 230 P.3d 1181, 1184 (Colo. 2010). An officer may search a lawfully arrested individual's person and the area within the arrestee's immediate control. *People. v. H.J.*, 931 P.2d 1177, 1183 (Colo.1997). Despite this well-established exception, the trial court held that the search in this case violated Marshall's Fourth Amendment rights because *Gant* modified the search incident to arrest exception. Specifically, the trial court opined that absent the exigencies required to search the compartment of a vehicle under *Gant*, the officers could not search Marshall's backpack.

¶ 11 To resolve this appeal we first consider *Gant*. After determining that *Gant* does

("Before evidence will be admitted under the inevitable discovery exception, the prosecutor must establish that the information ultimately or inevitably would have been discovered by lawful means." (citation omitted)).

not control our decision, we turn to this Court's Fourth Amendment jurisprudence.

### 1. *Arizona v. Gant*

¶ 12 The trial court erred when it relied on *Gant* to suppress the evidence found in Marshall's backpack. In that case, officers searched a defendant's vehicle and discovered contraband. *Gant*, 556 U.S. at 336, 129 S.Ct. 1710. The defendant was secured in the back of a squad car at the time of the search and the officers did not have probable cause to suspect evidence of a crime might be found inside the car. *Id.* at 336–37, 129 S.Ct. 1710. The United States Supreme Court ruled that the search incident to arrest exception did not justify the officers's warrantless search of the vehicle. *Id.* at 351, 129 S.Ct. 1710. This holding overturned the "widely understood" interpretation of *New York v. Belton*, 453 U.S. 454, 460–61, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), that a vehicle search conducted incident to the arrest of a recent occupant is a valid exception to the warrant requirement "even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 556 U.S. at 341, 129 S.Ct. 1710; *see, e.g., People v. McMillon*, 892 P.2d 879, 883 (Colo.1995) ("In *Belton*, the United States Supreme Court adopted a brightline test regarding the permitted scope of a search of the interior of an automobile incident to the lawful arrest of one of its occupants."). In lieu of *Belton*'s brightline rule, the Court concluded in *Gant* that police may search a vehicle incident to an occupant's arrest only where "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351, 129 S.Ct. 1710.

¶ 13 Marshall argues that an arrestee who is restrained in some fashion by law enforcement necessarily is secured such that a warrantless search of the arrestee's backpack incident to the arrest is never justified. *Gant* does not support such an expansive rule. The *Gant* Court's recitation of the general proposition that a search is illegal where "there is no possibility that an arres-

tee could reach into the area that law enforcement officers seek to search," 556 U.S. at 339, 129 S.Ct. 1710, must be understood in the context of that case—namely, an arrestee's ability to reach into the "passenger compartment" of his vehicle. *Id.* at 343, 129 S.Ct. 1710. Moreover, the Court noted that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Id.* (quoting *Thornton v. United States*, 541 U.S. 615, 632, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (Scalia, J., concurring)).

¶ 14 In contrast to the search of a vehicle, the arrest of a person necessarily involves greater officer safety concerns because, unlike items in the compartment of a vehicle, the arrested individual might still be able to access those items on his person even after arrest. Similarly, because the items remain in close proximity to an arrested individual, he might still be able to access that evidence. In brief, there is a factual distinction between searches of cars and persons. This Court's Fourth Amendment jurisprudence reflects this distinction and, accordingly, indicates that the trial court's extension of *Gant* without additional guidance from the United States Supreme Court was error. *Compare Gant*, 556 U.S. at 337–38, 129 S.Ct. 1710, with *United States v. Robinson*, 414 U.S. 218, 226, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). As such, we turn to this Court's precedent addressing the search of a person incident to arrest.

### 2. Search of Marshall's Backpack

¶ 15 Given that *Gant* does not control this case, we turn to this Court's precedent involving the search of a person incident to arrest. In *People v. Boff*, 766 P.2d 646, 647–48 (Colo.1988), the defendant, Boff, challenged the search of his backpack after his legal arrest. Boff was wearing the backpack when he was stopped by two police officers and it was on the ground next to him when he was arrested. *Id.* at 647. Officers did not search the backpack, however, until "[t]he backpack and [Boff] were [ ] driven to the Dolores County sheriff's office." *Id.*

¶ 16 After the officers found marijuana in the backpack, Boff was charged with cultivation of marijuana. *Id.* at 647–48. He moved the trial court to suppress the evidence found in the backpack, and the trial court granted the motion. *Id.* at 648. It reasoned that the search was not incident to Boff's arrest because the backpack had been out of Boff's control at the time of the search and therefore exigent circumstances did not justify the search. *Id.* This Court granted certiorari and reversed the trial court's suppression order. *Id.* We reasoned that "[t]he validity of the search of the backpack turn[ed] not on the presence or absence of the exigencies of police protection and evidence preservation, but on the fact that a person, under full custodial arrest based on probable cause, loses his expectation of privacy as to those items on his person at the time of his arrest." *Id.* at 651–52; *see also Robinson,* 414 U.S. at 235, 94 S.Ct. 467 ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."). Consistent with our analysis above, *Boff* suggests that the exigencies relied upon by the majority in *Gant* are not implicated by the search of a person, and articles on or near that person, after a lawful arrest. *See also People v. Bischofberger,* 724 P.2d 660, 665 (Colo.1986) ("Such a search of the arrestee's person requires no independent justifi-cation, and the searching officer may seize and examine weapons, contraband, or other articles which the officer reasonably believes to be related to criminal activity even though those articles do not directly relate to the offense for which the arrest itself was effected.").

¶ 17 In this case, the backpack was at Marshall's feet at the time of his lawful arrest. The officer searched Marshall's person and the backpack incident to the arrest. That Marshall was secure has no bearing on the analysis in this case because Marshall forfeited his expectation of privacy in the backpack when he was arrested, pursuant to Boff. The search was valid under this Court's Fourth Amendment jurisprudence. Accordingly, the trial court erred when it suppressed the evidence seized from Marshall's backpack.

### III. Conclusion

¶ 18 For the reasons stated above, we reverse the trial court's suppression order and remand for further proceedings consistent with this opinion.